---

(173 App. Div. 782)

### ARDEN v. LUBIN et al.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

COPYRIGHTS ⊙⊃50—CONSTRUCTION—PERCENTAGE CONTRACTS.

   Where an author transferred his rights to a moving picture scenario in return for royalties of 20 per cent. of the gross receipts derived from its use, he could recover only 20 per cent. of the amount actually received by the transferee; and if the latter let the work to a booking agency, he need account only for the amount received from, and not by, such agency.

   [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 47, 49; Dec. Dig. ⊙⊃50.]

Appeal from Special Term, New York County.

Suit for injunction and other relief by Edwin Arden against Siegmund Lubin and another. Judgment for plaintiff, and defendants appeal. Judgment modified.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Ralph Polk Buell, of New York City, for appellants.
Mortimer Fishel, of New York City, for respondent.

McLAUGHLIN, J.   This appeal is from a judgment canceling a contract between plaintiff and the defendant Lubin, enjoining him and the other defendant from exhibiting, selling, or leasing motion pictures founded on or connected in any way with certain specified plays, and directing an accounting of the proceeds derived by them from the exhibition of the play termed "The Eagle's Nest."

The plaintiff is an actor and dramatist.  On the 19th of February, 1914, he entered into a contract with the defendant Lubin, which was thereafter modified by two other written agreements, for the production of motion pictures founded upon plays written by him.  At the time the contract and modifications were made the plaintiff was the

owner of dramatic rights and the original copyrighted plays entitled "The Eagle's Nest," "Zora," "Raglan's Way," "The Ladder of Life," "The Pilot," and "The Question." By the terms of the contract he was to receive $250 per week for each week in which he was actually employed in the making of the pictures, and thereafter the defendant Lubin agreed to pay him—

"a sum of money equal to twenty per cent. (20%) of the gross sales or rentals and extra charges of whatsoever name and nature derived by the said Siegmund Lubin from the exploitation and distribution of the said motion pictures" of specified plays "throughout the United States of America."

He also agreed that on the 1st of August, 1914, and quarterly thereafter he would render to the plaintiff a true and accurate statement of all gross sales, rents, and extra charges arising in any manner whatsoever, and with such statement would remit the royalties agreed upon. The agreement further provided, if he did not render such statements, keep accurate books of account, or pay the royalties as agreed, that the plaintiff might cancel the agreements, in which case all rights of Lubin should terminate, and the copyrights of the plays should be retransferred.

The complaint alleged, in substance, a failure upon the part of Lubin to perform the terms of the contract on his part; that he had failed to produce any of the plays, except "The Eagle's Nest," and for such production had failed to pay the plaintiff 20 per cent. of the gross sales; that he had failed to make the statements agreed to be made; that the Lubin Manufacturing Company claimed some interest or right under Lubin's contracts with the plaintiff; that the plaintiff had demanded that the defendants and each of them pay him the amount due under his contract, which they had refused to do, and they had also refused to render true and correct statements of the amounts received from the production of the picture play "The Eagle's Nest." The judgment demanded was that the contracts be canceled, that the defendants be enjoined from producing any picture plays founded upon the plays specified, and that defendants account. The answer put in issue the allegations of the complaint as to the keeping of accounts and the rendition of statements, and alleged affirmatively that the defendants had paid to the plaintiff the royalties agreed upon. The judgment appealed from granted the plaintiff substantially all of the relief prayed for in the complaint.

After a consideration of the record on appeal I am of the opinion that the judgment is right, except as to the construction put upon the contract with reference to the amount of royalties directed to be paid to the plaintiff. The contract, as already indicated, provided that the plaintiff was to be paid 20 per cent. of the gross sales or rentals *derived* by Lubin. The plaintiff contends, and the trial court so held, that the 20 per cent. is to be figured on payments made by the exhibitors of the plays, while the defendants contend that it is to be computed on the amounts *received* by the defendants.

I think the defendants' contention is correct. It is the amount actually received by the defendants on which the 20 per cent. is to be computed. Having produced a play, if they see fit to put it in the hands of a

booking agent, the 20 per cent. is to be computed, not upon what the booking agent or the exhibitor of the play receives, but upon what is paid by them to the defendants. The word "gross" was inserted in the contract, undoubtedly, for the purpose of preventing Lubin's charging against the moneys received by him any sum whatever, either for manufacturing, booking, or producing the plays.

There is no dispute as to the amount which has been paid to the plaintiff, but there is no way of telling from the record before us whether the amount thus paid is 20 per cent. of the amount received by defendants, without any deductions therefrom. Such fact can be ascertained, however, upon the accounting. My conclusion, therefore, is that the judgment appealed from should be modified, as above indicated, without costs to either party. The order to be entered herein, which will be settled on notice, should contain the necessary modifications of the findings. All concur.

---

(173 App. Div. 709)

## In re EAST 157TH ST.

### Appeal of PELTZ et al.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

1. EMINENT DOMAIN ⚖=254—DISPOSITION OF AWARD—PARTIES ENTITLED TO APPEAL.

Although the defendant city did not avail itself of permission granted by the Court of Appeals to vacate an award in condemnation proceedings to persons unknown, it could wait until some other party moved, and was a party in interest, entitled to appeal from a further order of distribution.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 665; Dec. Dig. ⚖=254.]

2. EMINENT DOMAIN ⚖=63—ACQUISITION OF PROPERTY FOR STREETS—DAMAGES —EASEMENTS.

The owner of an easement in property taken by a city for a street in condemnation proceedings, who had not paid an assessment and had parted with abutting property without knowing of the proceedings, or the possibility of an award, is not entitled to share in the award, as her easement is not destroyed, but perpetuated.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 161–164; Dec. Dig. ⚖=63.]

Appeal from Order Entered on Report of Referee.